Eastern District of Kentucky
# FILED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

SEP 13 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-208-GWU

MICHELLE BAKER,                                                    PLAINTIFF,


VS.                          **MEMORANDUM OPINION**


JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.


## INTRODUCTION

The plaintiff had previously filed Baker v. Barnhart, London Civil Action No.

02-614 (E.D. Ky.) to appeal from the negative administrative decision on her

application for Supplemental Security Income (SSI).   After the undersigned's

Memorandum Opinion, Order and Judgment of May 28, 2004 (Tr. 464-468), the

case was returned to the agency for further consideration of her "severe" physical

impairment. (Tr. 468). Meanwhile, the plaintiff's consideration of subsequent SSI

applications was consolidated with the remanded matters. (Tr. 234). Another

negative administrative decision issued (Tr. 234-240) and the case is again before

the undersigned.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining

whether the findings of fact made are supported by substantial evidence. Jones v.

Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir.

1

Baker

1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th

Cir. 1990). This "substantial evidence" is "such evidence as a reasonable mind

shall accept as adequate to support a conclusion;" it is based on the record as a

whole and must take into account whatever in the record fairly detracts from its

weight. Crouch, 909 F.2d at 855.

The regulations outline a five-step analysis for evaluating disability claims.

See 20 C.F.R. Section 404.1520.

The step referring to the existence of a "severe" impairment has been held

to be a de minimis hurdle in the disability determination process. Murphy v.

Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986). An

impairment can be considered not severe only if it is a "slight abnormality that

minimally affects work ability regardless of age, education, and experience." Farris

v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985).

Essentially, the severity requirements may be used to weed out claims that are

"totally groundless." Id., n.1.

Step four refers to the ability to return to one's past relevant category of work,

the plaintiff is said to make out a prima facie case by proving that he or she is

unable to return to work. Cf. Lashley v. Secretary of Health and Human Services,

708 F.2d 1048, 1053 (6th Cir. 1983). Once the case is made, however, if the

Commissioner has failed to properly prove that there is work in the national

economy which the plaintiff can perform, then an award of benefits may, under

2

Baker

certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 CFR 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is

3

Baker

significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff first argues that the administrative law judge (ALJ) improperly concluded that her only "severe" impairment was obesity, although other conditions such as irritable bowel syndrome, anxiety/depression, and diabetes should have been similarly evaluated.

The undersigned had previously commented in a footnote that, based on the initial information, Dr. Varghese's findings regarding the plaintiff's mental problems were countered by the extremely high GAF of 85 from a treating source in 2001. (Tr. 468 n. 2). Varghese's progress notes, while citing anxiety and/or panic attacks many times, simply provided minimal objective details of the doctor's observations or interview of the plaintiff (e.g., Tr. 203-208, 340-350) and, as noted previously, was

4

Baker

at odds with a treating source. Yet another treating source's progress notes from July, 2002 to March, 2003 describe the plaintiff as being neatly groomed, calm, with a euthymic mood and good eye contact; indeed, in March, 2003, she reportedly had "no concerns." (Tr. 361-365). Given this specific information from treating sources, the ALJ was justified in finding no "severe" mental impairment, albeit this was only a de minimis hurdle.

As far as the plaintiff's diabetes was concerned, severe significant pieces of evidence were introduced upon remand. Most significant was the report of Monte Edward Martin, who functioned both as an examiner and reviewer of medical records. (Tr. 448). Cognizant of Dr. Varghese's blood sugar and A1C numbers for 2000 to 2003 (Tr. 448, 450) and noting that the plaintiff had vision at 20/30 and fine touch intact from his own evaluation, he found no chronic deterioration or complications from the plaintiff's diabetes. (Tr. 450). He then offered the opinion that the plaintiff had no limitation in physical activities due to diabetes. Even had the physician been a non-examining medical reviewer, this would have been sufficient to overcome Varghese's opinion that the condition imposed very severe restrictions. See Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). At any rate, the evidence from Martin would certainly support the proposition that the condition, even if "severe", imposed greater restrictions than were considered by the ALJ, so that no reversible error occured.

5

Baker

The plaintiff's irritable bowel syndrome was found to be the "most disabling" by one one-time examiner in 2000. (Tr. 118). However, she denied having diarrhea to the 2004 consultative examiner (Tr. 449) and an analysis of Varghese's progress notes after November, 2001 shows that they only contain one diagnosis of this condition (Tr. 340-351, 428-446) despite the fact that the doctor listed the condition on a 2003 assessment form (Tr. 354). Moreover, no physician ever made his own assessment, indicating a medically imposed need to have bathroom facilities near or to take bathroom breaks at specified intervals.

The plaintiff also argues that the 2003 opinion of Dr. Varghese (Tr. 353-356) was improperly discounted as a whole. Aside from the reasons noted in the preceeding paragraphs, two of the four diagnoses upon which the assessment was based (i.e., back and hip pain) were poorly documented in Varghese's notes and, as stated previously, the irritable bowl syndrome diagnosis appeared rarely after 2001.

The defendant's argument regarding the assessment of the plaintiff's credibility, which appears at pp. 6-8 of the defendant's brief, is hereby incorporated by reference.

The decision is affirmed.

This the ___/3___ day of September, 2006.

G. WIX UNTHANK
SENIOR JUDGE

6